LOUIS A. STEEN *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

## July 27, 1887.

**Master and Servant — Defective Apparatus — Assumption of Risks — Negligence.**—Evidence considered as justifying findings by the jury that the defendant was chargeable with neglect of duty to provide reasonably safe instrumentalities for the use of its servant, the plaintiff, and that the plaintiff was not chargeable with contributory negligence, or the voluntary assumption of the peculiar risk arising from the defendant's neglect; the apparatus being a pile-driver so defectively constructed that the wire rope for lifting the hammer would drop out of a pulley over which it should run, whereby it became ragged, catching the mitten of the plaintiff, and drawing his hand under the pulley.

The plaintiff was injured while in the employment of the defendant, and engaged, with others, in operating a pile-driver, and brought this action in the district court for St. Louis county to recover damages for such injury. The action was tried before *Start*, J., (acting for the judge of the 11th district,) and a jury, and plaintiff had a verdict for $4,000. Defendant appeals from an order refusing a new trial.

*Ensign, Cash & Williams*, for appellant.

*Edson & Warner*, for respondent.

DICKINSON, J.[1] This case has only required a careful consideration of the evidence for the purpose of determining whether it justified a verdict in favor of the plaintiff. More particularly, the appeal presents the double question as to whether the case justified the conclusion that the defendant was chargeable with neglect of duty towards its employe, the plaintiff, by reason of the dangerous condition of a pile-driver, in connection with which he was at work, and whether the case warranted the further conclusion that the plaintiff was not chargeable with contributory negligence, or with having himself assumed the risks resulting from the defects shown in respect to the machinery. The evidence tended to show a state of facts of which

[1] Berry, J., because of illness, took no part in this case.

the following is a summary: The plaintiff was employed as a laborer, with others, to operate the pile-driver, under a foreman. When he was employed he declared to his employer, but untruly, that he was accustomed to such work. The apparatus was new, being first put in operation on the day of the plaintiff's employment, February 3d. The cable by which the hammer was raised was a three-quarter inch wire rope. This ran from the top of the structure down, and under a drum-shaped pulley, and thence to and around a revolving drum at the engine, which was in a house some 20 feet in the rear. The pulley, or drum as it may better be termed, first mentioned, had projecting flanges at the sides to prevent the rope from slipping off. There were also other appliances, not necessary to be described, intended to serve the same purpose. The drum, revolving on a horizontal axis, had also designedly a considerable, and, as it seems, too great, rotary motion upon a perpendicular axis or swivel, for the purpose of allowing a change in the direction of the line when it became necessary to change the location of the machine.

The plaintiff was stationed at one side of the pile-driver, with an iron bar, to assist in holding the structure from being drawn backward on the ice by the engine when the hammer was being raised. The apparatus being put in operation on the afternoon of February 3d, it was then discovered that, by reason of defects in the structure and adjustment of the parts, the wire rope was liable, when slack, to get out of its place under the drum, so as to require that it be put back in place. The foreman directed the laborers, including the plaintiff, to watch this, and to put it back when it came out of place. There would have been no great difficulty in overcoming this defect, and by temporary appliances it was partially, but not wholly, remedied in the forenoon of the next day.

The evidence also tends to show that before the accident occurred some of the wires composing the rope had become broken or ragged, from cutting across the flanges of the drum, owing to the too great motion of the latter upon the swivel, and also from the power having been applied when the rope was off the drum.

In the afternoon of the second day of the work the engineer had stopped the engine to attend to some duties in connection with it.

The engine was thus motionless during a time, differently estimated, of from one to five minutes or more. The plaintiff, seeing the rope out of its place, took hold of it to replace it under the drum. Just then the engine was suddenly set in motion, and, the ragged or broken wire catching his mitten, his hand was drawn between the rope and drum, and crushed so as to render amputation necessary.

In the ordinary operation of the apparatus while driving a pile, the engineer would raise the hammer, let it drop upon the pile, immediately release the cable, which the weight of the nippers would cause to run out until the nippers had clasped the hammer again, when it would be immediately hoisted, and so on. The cable might thus come out of its position under the drum immediately after the hammer had been grasped, and just as the line was being drawn in to raise the hammer. It seems obvious that to operate the apparatus in this way, in view of the liability of the line to run off the drum, and with the expectation that the employes would put the line in place without stopping the machinery, might be deemed dangerous.

Again, it is to be observed that, as the evidence goes to show, owing to the defects in the apparatus, the wire rope which the employes were thus called upon to handle had become broken or ragged. Although this was not alleged in the complaint as a cause of action, the fact was litigated, and without objection this fact was allowed to be shown as a cause of the injury, although it was denied on the part of the defendant. This might be deemed to involve danger to employes necessarily wearing mittens, and it appears that the weather was very cold and frosty.

We see, therefore, no reason to declare the verdict unsustained, so far as it involves the determination that the defendant was not regardful of its duty towards its servants to exercise care to supply reasonably safe apparatus for their use. This duty is not limited to furnishing safe appliances in the first instance, but it extends also to their subsequent condition while in use. *Gates* v. *Southern Minn. Ry. Co.*, 28 Minn. 110, (9 N. W. Rep. 579.) In view of the defective operation of the apparatus on the first day of its use, it was a fair question for the jury as to whether the master, through the foreman in charge of the work, ought not to have discovered that the wire rope

had become broken, and a dangerous object to touch with a mittened hand, when liable to be set in motion without warning. Nor can it be said that the case so shows the plaintiff to have been guilty of contributory negligence, or to have voluntarily assumed the peculiar risk incident to the use of the defective apparatus, that the verdict should not stand. It does not appear that he knew that the rope had become broken or ragged until his hand was caught at the moment of the accident; and his duties do not seem to have required him to make examination as to that. The duty of the master and of the servant in that respect were not the same. *Russell* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 230, (20 N. W. Rep. 147.)

While the defects referred to were being partially remedied in the forenoon of the second day, the plaintiff was employed at other work about the engine-house.

As affecting the question of the plaintiff's negligence, it should further be considered that the machinery was wholly at rest, and had been for such a length of time as might be deemed to justify the expectation that it would not be started again without a signal from the foreman, whose duty it was to direct the operations, or unless the engineer from his place saw that he could safely set the machinery in motion again. If the plaintiff had seized the line while the machinery was in operation, in the manner we have indicated, the case would have been very different. Of course, the plaintiff is not to be deemed to have voluntarily assumed the risk incident to handling the stranded wire rope, if he did not know of its defects, and was not so employed that he ought to have made investigation, and it does not appear that such was the case.

The statement of the plaintiff, when he was employed, that he was accustomed to such work, excused the defendant from explaining to plaintiff the dangers ordinarily incident to such operations; but it did not qualify the obligation of the master in respect to furnishing reasonably safe appliances, nor excuse the master from liability for a neglect of that duty.

Order affirmed.