WILLIAM A. ANDERSON v. C. N. NELSON LUMBER COMPANY.[1]

December 28, 1896.

Nos. 10,284—(158).

**Injury to Employé—Contributory Negligence—Assumption of Risk.**

Evidence considered, and *held* to prove conclusively either that plaintiff was guilty of contributory negligence or that he had voluntarily assumed the risks which resulted in his injury.

**Duty of Servant.**

A servant has no right to neglect to exercise ordinary care for his own safety against open and patent dangers, discoverable by the use of his senses, upon the assumption that the master has done his duty.

**Statutory Duty.**

The mere fact that a duty is imposed by statute does not change the rules of law as to contributory negligence or the assumption of risks.

Appeal by defendant from an order of the district court for Carlton county, Morris, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $4,000, which was reduced with his consent to $3,000.    Reversed.

*Stearns, Watrous & Stearns* and *H. Oldenburg*, for appellant.

*H. H. Hawkins, Alpheus Woodward*, and *E. F. Lane*, for respondent.

MITCHELL, J.    This action was brought to recover for personal injuries caused by the alleged negligence of the defendant.    The plaintiff was employed as a knot sawyer or shingle grader in the

[1] Reported in 69 N. W. 630.

shingle department of defendant's sawmill.    The shingle department was on the ground floor of the mill, and the sawyers stood on a raised platform, the floor of which was about four feet above the floor of the mill.    The saws were set in a frame or table, on shafts or arbors raised about three feet, or to the height of a man's waist, above and at the side of and parallel with this platform.    There were five saws, in a straight line, and about three feet apart, which, when in motion, ran at a high rate of speed, making from 3,000 to 4,000 revolutions per minute.

Directly underneath the saws ran an elevator for the purpose of carrying off the sawdust and other refuse dropping from the saws. This elevator consisted of a leather belt, with cleats on it, and ran in a frame or box built on an incline; the distance from the elevator up to the teeth of the saws being at one end about 4 feet and at the other end, under what we may term the fifth saw, about 22 inches. This elevator ran upward from the first saw towards the fifth saw, and carried the refuse on past the fifth saw out through an opening at the end of the mill.    One half the saws, which were circular, was above, and the other half below, the table or frame on which they were set, their under part projecting about 2½ inches below the under side of this frame.    This 2½ inches of the saws was open and unguarded.    The elevator frequently clogged with refuse, and stopped, so that it became necessary for the sawyers, in the performance of their duty, to take measures to start it again.    Sometimes they accomplished this by going to the end of the arbors immediately beyond the fifth saw, where the elevator ran open, and pulling on the belt. If this method failed, as it frequently did, they had to stoop down and crawl under the frame in which the saws were set, and reach down into the elevator box, and loosen the refuse with their hands.

At the time in question, which was about 4 o'clock in the afternoon of June 1, the elevator clogged; and the plaintiff, in the line of his duty, stooped down, and went in under the frame, and reached with one hand down into the elevator box to remove the refuse.    As soon as he removed this refuse, the elevator started, when he pulled his hand out quickly to prevent its being drawn in by the elevator, and in doing so it came in contact with the exposed teeth of the fifth saw, and the result was the injuries complained of.

The only negligence charged against the defendant which could

be the proximate cause of plaintiff's injuries consisted in leaving exposed and unguarded that part of the saws which extended below the under side of the table or frame. We think that, under the evidence, it was for the jury to decide whether it was practicable to guard the lower part of the saws, and, if so, whether reasonable care did not require the defendant to do so. But, after a careful examination of the whole evidence, we are satisfied that it conclusively appears that the unguarded condition of the saws and the risks incident thereto were so perfectly plain and obvious to the senses of any man of ordinary intelligence that it must be held that the plaintiff either actually knew and appreciated them or ought to have done so, if he had exercised any sort of reasonable care, and hence that he cannot recover because either of contributory negligence or the kindred doctrine of assumption of risks.

He was not an inexperienced boy. He was 22 years old, had worked in shingle mills for 8 or 10 years, and as a sawyer for 3 or 4 years, and was quite familiar with the machinery in use in shingle mills. He had been working as a knot sawyer in this very mill for about a month. He had previously had frequent occasion to go in under this frame to clean out the elevator, which sometimes clogged up four or five times in a day. He had at different times taken this fifth saw off the arbor or shaft. Any man of common sense would know that, if half of a saw was above the table or frame, the other half must be below. It was perfectly obvious to any one who would use his sense of sight that the lower part of the saws extended below the table and was unguarded.

So far, at least, as the fifth saw was concerned, that fact could be plainly seen from the end without stooping down to look underneath the table. Notwithstanding some evidence to the effect that it was somewhat dark in this shingle mill towards evening on cloudy days, the evidence is conclusive that in the daytime, in any ordinary weather, it was perfectly light in this mill; in fact, it had to be so in order properly to sort the shingles. And, while it might not have been quite as light under the table as it was elsewhere, yet it conclusively appears that it was abundantly so to enable any one who would take the trouble to look to see that the saws were unguarded. Plaintiff himself, as well as his own witnesses, practically admit this. But he says he did not know that the saws were unguarded, because he

never looked to see, and the only reason he gives for not looking is that "he had no particular business to look." Knowing, as he must, that half of the saws was revolving under the table, and having frequent occasion, as he had, to go under there, and place portions of his body in comparatively close proximity to these saws, not to look would seem, under the circumstances, to be the grossest lack of ordinary care. He knew or was chargeable with knowledge of everything connected with the condition of the saws and the risks to himself as fully as were his employers, and yet continued his employment without complaint or objection.

But it is said that he had a right to assume that his employers had performed their duty by guarding the saws. This doctrine is not applicable where the servant knows or is chargeable with knowledge that his master has not performed his duty. No servant can invoke that doctrine as an excuse for his own negligence in shutting his eyes or closing his ears to obvious dangers, and failing to adopt the plainest dictates of common prudence for his own safety.

Some stress is laid upon the fact, as is claimed, that by Laws 1893, c. 7, § 1 (G. S. 1894, § 2248), the duty of guarding these saws was made a statutory one. The fact that a duty is imposed by statute does not change the rules of law as to contributory negligence or to assumption of risks, unless there is some provision in the statute clearly expressing or implying an intention to do so. Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986; O'Maley v. Gas Light Co., 158 Mass. 135, 32 N. E. 1119.

Order reversed, and new trial granted.