JAMES SOUTAR v. MINNEAPOLIS INTERNATIONAL ELECTRIC COMPANY.[1]

April 23, 1897.

Nos. 10,361—(33).

### Injury to Employe—Assumption of Risk.

Evidence considered, and *held* that, upon the most favorable view of it for the plaintiff, it conclusively shows that he voluntarily and knowingly assumed the risk of using a certain box, handed to him by the defendant's superintendent, to stand upon in order to reach a wire which they were repairing.

Appeal by defendant from an order of the district court for Hennepin county, Pond, J., denying a motion for judgment notwithstanding a verdict, or for a new trial. Reversed.

*Harrison & Noyes* and *Rolla E. Noyes*, for appellant.

*F. D. Larrabee*, for respondent.

[1] Reported in 70 N. W. 796.

START, C. J. Action to recover damages for injuries sustained by plaintiff, caused by defendant's alleged negligence. Verdict for the plaintiff for $6,574.88, and the defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict, or for a new trial.

The defendant claims that the evidence fails to show that it was negligent, but, if it be held otherwise, then it is claimed that the evidence clearly shows that the plaintiff was guilty of contributory negligence, and that the risk and danger, if any, of using the box in question in this case, were as obvious and as fully appreciated by the plaintiff as they were or could be by the defendant; hence the trial court ought to have directed a verdict for it.

The evidence as to several material matters is conflicting, but we must accept, for the purpose of this appeal, the most favorable view of the evidence for the plaintiff. His evidence tended to establish these facts:

The plaintiff, at the time of his injury, October 22, 1895, was 24 years old. He had been employed by the defendant for a year previous to his injury, as a carpenter, and in putting up, adjusting, and repairing electric wires. Prior to his employment by the defendant, he followed the business of a carpenter. During the time he worked for the defendant, George Lintner was its superintendent; and, at the time of the accident, the latter, the plaintiff, and the electrician, Beaumont, were engaged in adjusting wires which ran on the inside of the elevator shaft of the Edison Building, in the city of Minneapolis. The elevator shaft was next to the outside walls of the building, with windows nearly as wide as the elevator, and some seven feet high,—one on each floor. The window sills on the inside, between the window and the elevator, were level, and 18 inches wide. The elevator was a square open platform for freight, which was operated by William Aldrich, and was standing at the time of the accident between the second and third floors of the building, and about four feet above the window sill of the window along which ran the wires which were being adjusted. While the plaintiff was standing on the platform of the elevator, and engaged in sawing a wire, he was directed by Lintner, the superintendent, who was also on the platform, to get down and stand on the window sill, as it was awkward working where he was. The plaintiff did as directed, and found that he was not tall enough to reach the wire, and so told Lintner, who directed Aldrich to get something for the plaintiff to stand upon. Aldrich got, as plaintiff claims, from a printing office in the build-

ing, a box, and passed it to Lintner, who immediately, without examination, passed it to the plaintiff, and said, "Stand on that;" also, "Hurry up; we want to get this work done before dark." The plaintiff, without paying any attention whatever to the box, except to observe that it was a box, for the reason, as he claims, that he was being hurried, took it from Lintner, placed it sidewise on the window sill, and parallel thereto, stepped upon the box, which broke, and he was thereby thrown under the bottom of the elevator platform, and down the shaft, breaking his leg, and otherwise seriously injuring himself by the fall. The box was $2\frac{1}{2}$ feet long, 18 inches high, and 8 inches wide, made of inch boards nailed together, and "seemed to be a good solid box." It was without cover or bottom, with a narrow strip nailed diagonally across from corner to corner. There were no latent defects in the box. It was perfectly light where the plaintiff stood on the window sill; also on the platform. His eyesight was unimpaired, and he had been accustomed as a carpenter to handle lumber, build frame houses and scaffolds. He had also previously worked in this same elevator shaft, adjusting and repairing the wires therein. When the plaintiff and Beaumont commenced the work in question, Lintner was not present. He visited the work two or three times during its progress, and, when present, both assisted in the work, and directed it. His last visit to the work was about ten minutes before the accident. He went to the platform where the plaintiff was standing, and began to prepare the welding material for the wires. What followed we have already stated.

The foregoing statement of facts is as favorable to the plaintiff as his testimony warrants, and is based upon the assumption that it was true, although he was contradicted in material particulars. Do these facts show, as a matter of law, that the defendant was not liable to the plaintiff for his injuries? Our conclusion is that they do.

A master is bound to use reasonable care, to provide his servant with reasonably safe tools, implements, and instrumentalities to do his work, a safe place for the execution of the work, and to direct and supervise the performance of the work in a reasonably safe manner. Whoever is authorized to discharge these duties for the master is a vice principal, no matter what his title or rank may be. Such is the statute, and such was the law before it. Laws 1895, c. 173. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020. This statute is merely declaratory of the common law, and does not change the rules of law as to contributory negligence or assumption of risks by the servant. Hess v. Adamant, 66 Minn. 79, 68 N. W. 774.

The question of the defendant's liability in this case must be determined, not by a literal reading of the statute, whereby its just and salutary principles might be unjustly extended by technical reasoning to a case never contemplated by it, but by a common-sense consideration of the precise facts of this particular case with reference to the statute, interpreted by the rules of the common law as declared by this court.

The box in question was not strictly a tool or an implement or instrumentality for the doing of the defendant's work. It was a temporary expedient, resorted to to meet an unexpected and simple exigency in the execution of the work. But assuming, without so deciding, that the questions whether the box was an instrumentality for the doing of the work of the defendant within the rule, whether Lintner in handing it to the plaintiff was acting as a vice principal, and whether he was wanting in ordinary care in not testing the sufficiency of the box for the use to which it was to be put, were all questions for the jury, still it is clear that the defendant was not entitled to recover, for he must be held to have voluntarily and knowingly assumed the risk (if any there were) of using the box. The place where he was doing his work was a safe one; the work itself was neither complicated nor dangerous; and he fully understood it. It was only when he stood upon the box that he was in any danger, and such danger arose from the simple fact that the box was not strong enough to bear his weight. There being no latent defects in the box, it was a matter of judgment whether it would hold him up. He knew that it was simply a makeshift to enable him to reach the wires; that it had never been in defendant's possession; that it was neither selected nor examined by Lintner; that it was simply passed through his hands. There were no concealed dangers. He knew just as well as Lintner could, if not better, without making an actual test, whether the box was safe, for he was a carpenter with experience in handling lumber and building scaffolds, and a competent judge whether an inch board, 30 inches by 8 inches, without latent defects, would hold him. He assumed for himself the ordinary and obvious risks of using the box.

It is, however, urged by plaintiff's counsel that he comes within the rule that the servant has a right to assume that the master has exercised due care in selecting an appliance furnished him. and that it

is reasonably safe. The rule has no application to the plaintiff, for he knew that no examination or test of the box had been made, and he further knew whether it was safe or not, just as well, if not better, than the defendant's superintendent did. If the latter was negligent in not testing the box, the plaintiff knew that no test had been made. There was no disparity of skill or knowledge between the two, unless it was that the plaintiff was the better informed in the premises. If Lintner was negligent in handing the box to the plaintiff without examination, the plaintiff, knowing this, was either guilty of negligence in using it without examination, or he voluntarily assumed the risk that resulted in his injury. Anderson v. Nelson, 67 Minn. 79, 69 N. W. 630.

Order reversed, and case remanded to the district court, with direction to enter judgment for the defendant.

MITCHELL, J. While I concur in the result, and am not prepared to dispute the correctness of the ground upon which the decision is put in the foregoing opinion, yet I prefer to place it upon the ground that, under the particular facts of this case, the box was not an instrumentality or appliance furnished by the defendant to the plaintiff for use in the performance of his work; and, what is perhaps but another way of stating the same thing, that, in what Lintner did in reference to procuring the box for plaintiff's temporary use, he was a fellow servant with plaintiff, and not a vice principal.

CANTY, J. If the box in question is to be classed with the permanent tools or instrumentalities furnished by the master for the performance of the work, the verdict should stand. In that case it would be the duty of the master to inspect the box before furnishing it to the servant for use. In making or failing to make such inspection, the foreman would be acting as a vice principal, and the servant would be entitled to act on the assumption that the master had performed his duty in furnishing safe instrumentalities. But, in my opinion, the box cannot be so classed. On the contrary, it belongs to that class of temporary appliances which the servants provide for themselves during the progress of the work, and as a part of that work. It belongs to the same class of appliances as temporary scaffolding, staging, and curbing, constructed during the progress of the work,

and as a part of it. To constitute the foreman a vice principal in such a case, there must have been some substantial disparity in knowledge or skill between the foreman and the inferior servant injured. But there was none in this case. A person performing plaintiff's duties should be as capable, and plaintiff was as capable, of inspecting the box, and judging of its strength, as the foreman was, or as a competent foreman should be. Then, as respects the matters in question, plaintiff and the foreman were fellow servants, and plaintiff cannot recover.