HENRY BELL v. ROBERT A. LANG.[1]

May 17, 1901.

Nos. 12,543—(93).

**Personal Injury—Fellow Servant.**

The plaintiff and S., the servants of the defendant, were assigned the duty of loading a pile-driver hammer upon a wagon. In doing so they used a tree standing by as a tackle post, which was uprooted, fell, and injured the plaintiff, by reason of the force applied in an attempt to

[1] Reported in 86 N. W. 95.

swing the hammer upon the wagon by the use of the tackle.  S. selected the tree and directed the work as foreman.  *Held,* upon the special facts of this case, that the tree was not an appliance furnished by the defendant, but a mere temporary instrumentality provided by the servants themselves during the progress of the work, and that in selecting the tree S. was not acting as a vice principal.

Action in the district court for St. Louis county to recover $15,000 damages for personal injuries.  The case was tried before Jaggard, J., who at the close of plaintiff's testimony directed a verdict for defendant.  From an order denying a motion for a new trial, plaintiff appealed.  Affirmed.

*C. D. & Thos. D. O'Brien,* for appellant.

*Chas. H. Taylor* and *Frawley, Bundy & Wilcox,* for respondent.

START, C. J.

This is an action to recover damages for a personal injury sustained by the plaintiff while in the employ of the defendant on the alleged ground that the defendant was negligent in furnishing unsafe appliances for the work in which the plaintiff was engaged, and in failing to inspect them, and in failing to instruct him as to the danger of the place in which he was required to work.  At the close of the plaintiff's evidence the trial court directed a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

The evidence tended to establish these facts:  The defendant, in October, 1896, was engaged in building a dam across the Nemadji river, in Wisconsin, upon which he employed a crew of some forty men, of whom the plaintiff was one; also Charles Sherman, who was the engineer on the pile driver, and directed the men when and where to work in the absence of the defendant.  The plaintiff was principally employed in driving oxen and getting out timber in the woods for the dam.  He was forty-two years old, and had worked for twenty-six years in logging in the woods, driving logs in the river, and as an explorer looking up and estimating timber in the woods, and was entirely familiar with the different kinds of trees when he saw them.  After the work on the dam had been completed, and on the evening before the plaintiff was injured, Mr. Sherman, who is hereafter designated, for convenience, as the

"foreman," directed him to haul the hammer of the pile driver to the top of the hill, and leave it at the foot of a tree there standing. He did so, and on the next morning the foreman and the plaintiff went with block and tackle for the purpose of loading the hammer, which weighed some fourteen hundred pounds, upon a wagon, for the purpose of hauling it to another place. The plaintiff, at the direction or suggestion of the foreman, climbed the tree some fourteen feet, and attached a block to it by means of a chain, and a second block was fastened to the tree at its foot. A rope was passed through the blocks, one end of it fastened to the hammer, and the oxen hitched to the other. The hammer was then, by starting the oxen, raised and placed upon a plank resting on the top of two barrels. Then another rope was fastened to the hammer, and thrown crosswise of the wagon, and the oxen hitched to this rope, for the purpose of swinging the hammer out over and placing it upon the wagon. When the oxen were started, the hammer was pulled away from the tree, the weight of the hammer and the force exerted by the oxen pulled the tree up by the roots without breaking it, and in falling it struck the plaintiff upon the neck, shoulder, and arm, breaking the latter, and otherwise injuring him. The tree selected as a post for the tackle was a black birch, some forty feet high, twelve inches in diameter at the butt, and eight inches at the point where the chain was placed around it. Its top had been broken off, and the tree was dead, and any woodsman could readily have discovered its condition in this respect. None of the roots of the tree, however, were exposed to view before it was pulled down, and there were no surface indications, other than the fact that it was dead, that it was liable to fall. The plaintiff fully understood the use of the blocks, tackle, and ropes, and that pulling the hammer away from the tree would bring it down unless it was strong enough to resist the force. The sole cause of its falling was that its roots were not strong enough to resist the force applied. The foreman worked with the plaintiff in loading the hammer, but he directed whatever was done.

Even if it be conceded that the foreman, in selecting the tree as a tackle post, was acting as a vice principal, it is difficult to see

wherein he failed to exercise ordinary care. The plaintiff was not inexperienced in the premises, but fully understood the work to be done, the appliances for doing it, and the dangers, if any, incident to them; and, if the foreman was negligent, it would seem to follow that the plaintiff was also.

But we prefer to and do base our conclusion that the trial court correctly directed a verdict for the defendant upon the ground that the foreman, upon the special facts of this case, was not a vice principal, but a fellow servant, in selecting the tree, and in directing and assisting in the loading of the hammer. The tree selected and used as a tackle post was not an instrumentality or appliance furnished by the defendant to the plaintiff for the performance of his work. On the contrary, it was a mere temporary instrumentality provided by the defendant's servants themselves during the progress of the work, and as a part of the details thereof, and belongs to the same class of appliances as scaffolding and curbing constructed during the progress of the work, which are invariably held not to be appliances furnished by the master. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020; Bergquist v. City of Minneapolis, 42 Minn. 471, 44 N. W. 530; Marsh v. Herman, 47 Minn. 537, 50 N. W. 611; Soutar v. Minneapolis I. Ele. Co., 68 Minn. 18, 70 N. W. 796; Oelschlegel v. Chicago G. W. Ry. Co., 73 Minn. 327, 76 N. W. 56, 409. In this respect the case is clearly distinguishable from the cases cited and relied upon by the plaintiff, where the thing which occasioned the injury was a part of the permanent appliances of the master; such as a telegraph pole, or derrick, or pile driver, or a car. Kelly v. Erie Tel. & Tel. Co., 34 Minn. 321, 25 N. W. 706; Steen v. St. Paul & D. R. Co., 37 Minn. 310, 34 N. W. 113; Anderson v. Minnesota & N. W. R. Co., 39 Minn. 523, 41 N. W. 104; Sather v. Ness, 44 Minn. 443, 46 N. W. 909.

This case is also to be distinguished from those where the character of the work is such that the master owes to the servant the duty of its supervision, and the servant is ordered by the foreman in charge from one part of the work to another, which he knows or ought to know is dangerous, but the servant is ignorant of the peril to which he is exposed by obeying the order. The cases of Carlson v. N. W. Tel. E. Co., 63 Minn. 428, 65 N. W. 914; Abel v.

Butler-Ryan Co., 66 Minn. 16, 68 N. W. 205; Holman v. Kempe, 70 Minn. 422, 73 N. W. 186; Stahl v. City of Duluth, 71 Minn. 341, 74 N. W. 143; Hill v. Winston, 73 Minn. 80, 75 N. W. 1030,—belong to this class, and have no application to the facts of this case.

Order affirmed.