WILLIAM J. McKENNA v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

July 8, 1904.

Nos. 13,966—(134).

**Negligence.**

In an action to recover damages for personal injuries alleged to have been caused by the negligence of defendant, it is *held* that the evidence is insufficient to justify a recovery by plaintiff on either ground of negligence relied upon, viz., (1) that defendant was negligent in failing to provide plaintiff with a reasonably safe place in which to do his work, and (2) that defendant was negligent in failing and neglecting to provide plaintiff with sufficient help and assistance.

Action in the district court for Hennepin county to recover $25,474 for personal injuries. The case was tried before Brooks, J., who directed a verdict in favor of defendant upon the conclusion of plaintiff's testimony. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*James D. Shearer,* for appellant.
*H. H. Field* and *F. W. Root,* for respondent.

BROWN, J.

Action to recover for personal injuries alleged to have been caused by the negligence of defendant. A verdict was directed for defendant in the court below, and plaintiff appealed from an order denying his motion for a new trial.

[1] Reported in 100 N. W. 373; 101 N. W. 178.

The facts are as follows: Defendant was engaged in replacing an old railroad bridge over the Mississippi river at Minneapolis by a new and larger structure, and without interruption of its use of the old bridge. The old bridge was of iron and steel, over which the trains of defendant passed; the new bridge was a Baltimore truss, on piers of iron and stone, but larger in every way than the old one, around which it was built. The method of building the new bridge was to erect wooden false work from the foundation, upon which the new structure was erected and rested until it was self-supporting, at which time the false work was removed, and the material used therein taken away. The lower surface of the new bridge formed a floorway upon which was placed an improvised railroad track, which was used, by means of small truck cars pushed by hand, to take material to and from the work, material to be used in the construction of the new bridge, and material from the false work taken down and removed to the adjacent bank of the river. This track was somewhat lower than the top of the old bridge, of the ordinary width of railroad tracks, and was planked between the rails, with one plank of the width of twelve inches on either side.

On the day in question the workmen engaged in the construction of the bridge were hoisting material from the ground, a distance of fifty or seventy five feet, to the truck cars on the track just referred to. This was accomplished by means of ropes and pulleys operated by a steam engine situated on the ground on the river bank near the bridge. The employees were raising large timbers of the dimensions of three by twelve inches, and twelve to sixteen feet in length, to the cars. The method was to take a number of the planks, attach them to the pulley rope near the center, so that, when lifted from the ground, they would remain in horizontal position, and were thus raised on the outside of the bridge to a point some distance above the truck cars, at which time, by means, as described in the record, of an inhaul rope, they were drawn in between the piers of the bridge and placed upon the cars, and then moved to the point where needed in the work. Plaintiff was superintending or overseeing this particular work. He had charge of that portion requiring the timbers, when raised to and brought within the structure, to be properly loaded upon the truck cars, and on a line parallel with the track and bridge. He was stationed between the rails

of the track, and at one end of the cars, with an assistant at the other end. Plaintiff gave all signals to the engineer respecting the operation of the engine, directing him when to raise, lower, or hold the load. These signals were communicated by him to the engineer by motions of the hands when he was within view, but when not in view the signals were given by his voice. When the load of timbers which caused the injury to plaintiff was raised to and brought within the bridge structure, preparatory to being loaded on the cars, and when some distance above plaintiff's head, he signaled the engineer to lower the same, which signal was heard and acted on accordingly. But the load did not hang horizontal, the end nearest plaintiff's assistant being lower than the one next plaintiff, and to adjust it properly upon the truck cars he gave a signal to the engineer to hold it; but almost instantly upon giving the signal the end furthest removed from plaintiff struck the car, or some other timbers previously loaded thereon, causing the end next him to swing against his person, knocking him from the bridge and inflicting very serious injuries upon his person. He brought this action for damages, alleging negligence on the part of defendant in various respects. On the trial in the court below the court directed a verdict for defendant.

The various assignments of error made in this court present but two questions for review: (1) Whether defendant was negligent in failing to furnish plaintiff with a reasonably safe place in which to do his work. (2) Whether defendant was chargeable with negligence in failing to furnish plaintiff with sufficient help and assistance properly to perform the duties required of him.

1. It is the contention of plaintiff that defendant was guilty of negligence for its failure to provide him a safe place in which to perform his work. A careful examination of the record leads to the conclusion that this position cannot be sustained. The work in which plaintiff was engaged was exceedingly hazardous, and attended with dangers of many kinds; the bridge was being constructed over the river at a distance of something like one hundred fifty feet from the water; plaintiff was employed because of his previous experience in work of a similar character—not, perhaps, upon the construction of bridges, but work upon scaffolds and other high places. The situation was open to his full observation and view, the nature of the work obvious, and he must

be taken to have assumed all incidental risks and hazards.   The claim of plaintiff in this connection is that the company should have provided a floor for that portion of the bridge upon which the truck cars were operated; that, if it had been so provided, plaintiff would not have been thrown from the bridge; and, further, that it was an act of negligence for defendant to place the track on the south side of the bridge, leaving the space of only a foot between the track and the outer edge of the bridge, upon which employees were to stand when at work loading the cars.   But the evidence falls far short of showing that the absence of a floor, or the location of the track on the south side of the bridge, contributed in any degree to cause the accident.   Plaintiff's position at the time was upon the plank floor between the rails of the track, and the fact that other portions of this part of the bridge were not planked in no way contributed to cause the accident.   The evidence is that the track was moved to the south side of the bridge to facilitate the work, and was necessary.   An accident of this kind was as likely to happen with the track on either side of the bridge.

2. It is contended by plaintiff that defendant was chargeable with negligence in failing to furnish plaintiff with sufficient help; that because of such failure, and not otherwise, the accident complained of was caused.   The precise claim made in this connection is that defendant should have furnished plaintiff an extra man whose duty it would have been to repeat or communicate to the engineer all signals given by plaintiff during the progress of the work of hoisting material; that his attention was diverted from his work in loading the cars by the performance of the further duty of signaling the engineer; that at the time in question the engineer was not in view, and to make his voice heard plaintiff was required to turn his head in the direction of the engineer, which distracted his attention from the matter of loading the timber, when, if another employee had been furnished to repeat the signals, his attention would not have been diverted, and no accident of the kind complained of would have occurred.   We are unable to concur in this view of the case.   The testimony of plaintiff is that, almost immediately upon giving the last signal to the engineer to hold the load, he was struck by the timbers and knocked from the bridge.   The statement, corroborated by other witnesses, must be taken as presenting the true situation, and it conclusively shows that, even if there had

been another employee with the duty to repeat signals from plaintiff to the engineer, it would have been wholly unavailing in this instance. The other employee would not have had time to have repeated the signal last given by plaintiff before plaintiff was struck and knocked from the bridge. And, besides, it appears that all other signals given by plaintiff on this occasion had been heard and acted upon by the engineer, and, no doubt, if the signal in question had been timely given it would have been obeyed, and the load held by the engineer until further signals were given to lower it.

The claim that plaintiff's attention was diverted from the work of loading the timbers upon the cars by reason of the fact that he was required to give signals to the engineer does not seem to us to have much force. Whether he communicated his signals by voice to the engineer or to a co-employee, and by the latter repeated to the engineer, the case is precisely the same; plaintiff's attention would have been diverted as much in one case as in the other. All signals to raise, lower, or hold originated with plaintiff, and he would be required to communicate them to the assistant, if one were furnished him; and the same effort would be required, and the same attention demanded, as though they were communicated direct to the engineer. It is therefore clear that the absence of an assistant was not the proximate cause of the injury complained of.

The case of Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913, is not in point. In that case it appeared that the presses that plaintiff was engaged in moving were very heavy, not easily moved by one person, likely to fall over if not handled with care, and would not stand alone detached from the floor if the heavy weight at the top was removed; that plaintiff was unacquainted with their construction, unfamiliar with and did not appreciate the dangers of moving them without assistance, and especially the result to follow the removal of the heavy weight. It further appeared that the foreman in charge of this department of its business was familiar with the construction of the presses and the dangers incident to moving them about. It was held that it was defendant's duty to inform and instruct plaintiff upon such matters, and to provide him with sufficient assistance safely to perform his work, and that the evidence was sufficient to take the case to the jury on the question whether defendant performed its duty in that

respect. In the case at bar plaintiff fully understood the nature of the work in which he was engaged, there were no hidden or unforeseen dangers connected with it, and the rule of the Peterson case does not apply. The same may be said of Dell v. McGrath, 92 Minn. 187, 99 N. W. 629.

There is little or no doubt in our minds that the unfortunate accident was caused by the negligence of plaintiff's fellow servant stationed at the other end of the cars to assist in loading the timbers. If he had properly performed his duties and kept this particular load of timbers from striking the cars, or other material previously loaded upon them, as he should have done, it would not have swung around and struck plaintiff; and it is conclusive that his failure to act was the immediate and proximate cause of the injury complained of. But there is no liability in such cases; our statute making the master liable for the negligent acts and omissions of fellow servants does not apply. Bell v. Lang, 83 Minn. 228, 86 N. W. 95.

For the reasons stated, we are of opinion that the learned trial court properly instructed a verdict for defendant, and its order denying a new trial is affirmed.

Order affirmed.

DOUGLAS, J. (dissenting).

While assenting to the first proposition decided, I cannot agree with the majority of the court in holding that defendant was wholly free from negligence. In my judgment the evidence tends to show, and that, too, very clearly, that the failure of defendant to furnish an additional assistant was the proximate cause of the injury. The rule is conceded that it is the duty of the master to furnish a sufficient number of men to perform their work safely. Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913; Dell v. McGrath, 92 Minn. 187, 99 N. W. 629, and cases cited.

Plaintiff was engaged with one assistant in loading heavy planks and timbers upon a push car upon a partially inclosed bridge suspended about forty feet above the ground. Such timbers were raised from below by means of a rope attached thereto near the center, and with pulleys and other means drawn into the structure and lowered to the car, upon which plaintiff and his assistant helped to adjust them. At

the time of the injury the rope was attached a trifle one side of the center of the timbers, so that they were not suspended in exact balance, the end toward plaintiff being the highest at the time they were lowered. The power used was an engine situated about fifty feet distant, and out of sight of plaintiff. It appears that during most of the time for a number of weeks prior, when the engine was at a greater distance from the work and out of sight of plaintiff, a third assistant was furnished, who stood in sight of and back of plaintiff, but also within sight of the engineer, and transmitted the signals given by plaintiff for the lowering or raising of the timbers. Under such circumstances the inference is clear that plaintiff was permitted to give his entire attention to the lowering and placing of the timbers, and enabled, in case of sudden movement, to change his position upon the bridge, and thereby escape possible or threatened injury. Plaintiff testified positively that his attention was diverted at the time of the injury by giving signals with the voice. The code of signals commonly used when the engine was in view had been certain motions of the hands, which were made by the plaintiff with his back turned toward the engineer. This method permitted him constantly to keep his eyes upon the approaching object.

The record shows that prior to the accident, as well as on the morning of the day plaintiff was so gravely injured, he called for an additional assistant for the purpose of transmitting signals; also that he was expecting the arrival of such a man at any moment. At the time of the injury the outer track upon which the push car was placed was twelve inches from the outer edge of the cross-ties of the bridge. Plaintiff stood between this very narrow track. In giving the signal to lower, he was compelled to turn his head away from the timbers and face the engine, to enable the engineer to hear him. While this signal was being acted upon, it became necessary that he should transmit a signal to stop the load in its descent. It was then approximately four feet above him, and in signaling he partially turned his head toward the engineer, and at the top of his voice called "Hold!" His eyes were for a moment taken from the descending object, and almost immediately after giving the signal he was struck by the timber and knocked off the bridge. The time between the giving of this signal and the infliction of the blow which permanently disabled him cannot be accurately measured. It can fairly be assumed, however, that in this interim

he could and would have protected himself had his attention not been distracted by the exigencies of the work which he was required to do. With a third assistant standing within sight behind him to have received and transmitted the ordinary signals given with the hands, this terrible accident, in my judgment, would have been averted. A disinterested witness of wide experience in this class of work testified:

> I say that it is not usual to give signals by hollering; we never did. In working inside a bridge, as these men were, and the structure of the bridge prevented the engineer from seeing, and he could hear signals by word of mouth, it would not be a proper method of signaling.

That it was the duty of the master to furnish additional help where the danger was so imminent seems clear, under the rules of law adopted by this court in the cases above cited.

I cannot attribute, as the proximate cause of the injury, the neglect of the fellow servant who was engaged at the other end of the car in assisting plaintiff. The load was hung east of the center by a single rope, and in descending one end was much lower. When being lowered, this end would naturally prevent plaintiff's assistant from seeing him during a material space of time before the crucial moment. It follows he could not observe plaintiff's danger, and certainly, under such circumstances, should not be called upon to anticipate either that plaintiff was in danger or could not take care of himself. Again, the fact that the load was suspended by a swinging cord is convincing that he could not fully control the end farthest distant from him, and particularly so after his end struck the car. He so testified, and stated that he had hold of the load at the time. Another witness testified that unless the inhaul line, as well as the one upon which the load was suspended, were slacked off together, plaintiff's assistant could not control the timbers. I cannot agree with the majority that it would require the same effort and command the same attention on behalf of plaintiff to give signals with the hands to an assistant standing in sight on the bridge, as it would to partially turn and transmit a signal by the voice fifty feet to an engineer, who was out of sight, through what practically amounted to a tunnel. Had a third man been furnished, such signals could have been given by the plaintiff either by motion of the hands or

by the use of low tones of the voice, without his being compelled to turn his head or remove his eyes from the descending object; and from the undisputed evidence of expert workmen it appears the method of signaling adopted was not customary. In my judgment, there was evidence clearly tending to show that the accident was caused by the negligence of the defendant in failing to provide sufficient help safely to perform the work, and the trial court erred in not submitting the question of negligence to the jury.

The following opinion was filed November 11, 1904:

PER CURIAM.

On reargument of this cause, which was granted upon one question, viz., whether the failure of defendant to provide plaintiff with an assistant was the proximate cause of the injury complained of, a majority of the court are of opinion that the former decision in the case should be, and it is, adhered to.

Order affirmed.