## John Wilson, Plaintiff in Error, v. Railway Steel Spring Company, Defendant in Error.

1. MASTER AND SERVANT—*when doctrine of assumed risk applies.* "If a defect is so plain and obvious to the senses that, on the exercise of ordinary care, an employe would discover it, and he continues in the employment without complaint and without any assurances by the master that the defect will be repaired or the danger removed, he assumes the risks arising from it."

2. MASTER AND SERVANT—*upon what doctrine of assumed risk based.* Assumption of risk is not a term of the contract of employment or the agreement of the parties, but is an incident of the relation of master and servant, based upon public policy and upon the maxim *volenti non fit injuria.*

3. MASTER AND SERVANT—*statutory construction; effect of penalty.* A statute does not change a rule of common law unless an intent appears. When a penalty is imposed for a breach of statutory duty, one entering into employment may in the absence of knowledge assume that the statute has been complied with; but the relation between the parties is not changed.

4. INSTRUCTIONS—*when peremptory proper.* Where the evidence does not fairly tend to prove all the averments necessary to make out a case the court should direct a verdict for the defendant.

5. FACTORY ACT OF 1909—*construed.* The Factory Act of 1909 so-called does not abolish either the defense of assumed risk or that of contributory negligence.

Action in case for personal injuries. Error to the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed November 11, 1911.

**Statement by the Court.**    This is a writ of error to review a judgment of the City Court of East St. Louis, on a verdict of not guilty returned by the direction of the court.

Defendant in error on January 4, 1910, was operating a manufacturing plant in East St. Louis for the manufacture of steel springs for railroad cars and locomotives. Plaintiff in error had been in the employ of defendant in error for about eighteen months, and had charge of two testing machines for testing the springs there in the plant. These testing machines were about thirty feet apart; and about half way on a line between them was another machine called a drill-press, used in drilling holes in the said springs. The drill-press consisted of an upright iron column from which an arm eight feet long extended at a right angle. From this arm a bit used in boring holes, extended downward; and the arm was so arranged that it could swing around the column. The drill was driven by an electric motor. The cog-wheels about five inches in diameter attached to the horizontal rod and to another rod connected with the drill, engaged each other at right angles and conveyed the power from the motor to the bit. They stood out about six inches from the column and about three or four feet from the floor, and were wholly exposed and so situated that it was practicable to have them guarded.

The evidence discloses without controversy that plaintiff in error was thoroughly familiar with the drill-press and cog-wheels on the day of his injury, and testified himself that he knew if he got his fingers caught by the cog-wheels while in motion that he

would be injured; that he had not been working there very long before he noticed them, and that they were plainly visible at all times of his employment; that he would pass the cog-wheels nearly every hour of the day in going from one testing machine to the other; that he always knew when the drill-press was in operation, and that he worked in the day time; that on the above date, he was in the act of getting a hammer from a box located near the drill-press, when his foot slipped on some round substance on the floor, causing him to involuntarily throw up his hand, whereby it came in contact with the cog-wheels, and his little finger and the one next to it were ground off to his hand. He also says that there was always rubbish lying around the floor, pieces of steel and iron, while he worked there, and that he was familiar with this fact.

The declaration was predicated upon the negligent failure of the defendant in error to perform its alleged statutory duty to enclose said cog-wheels by fence or guards, in violation of section 1 of the Factory Act, which became effective January 1, 1910. Laws of Illinois, 1909, page 202.

D. J. SULLIVAN, for plaintiff in error.

DAN McGLYNN, for defendant in error.

PER CURIAM. Plaintiff in error contended in the lower court, and now contends here, (1) that he did not assume the risk due to the failure of defendant in error to comply with the requirements of the statute in reference to guarding the exposed cog-wheels; and (2) that even if that is not true as a matter of law, the question whether or not the risk was in fact assumed by him was a question of fact for the jury. It is clear under the uncontroverted evidence stated, that the plaintiff in error assumed the risk; and that the court committed no error in directing the verdict, unless the "Factory Act" eliminates the defense of

assumed risk. ''If a defect is so plain and obvious to the senses that, in the exercise of ordinary care, an employe would discover it, and he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed, he assumes the risks arising from it.'' ''The rule also applies in any case where the servant, during the course of his employment, becomes aware of a defect but voluntarily continues in the employment without objection.'' C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492; Christiansen v. Graver Tank Works, 223 Ill. 142.

The declaration was evidently drawn upon the theory that the Factory Act eliminates the defense of assumed risk, for it is not therein alleged that he did not have notice or knowledge of the danger. The evidence in the record clearly shows that the plaintiff in error knew all about the defects and dangers, and there is no evidence in the record showing that he did not have notice or knowledge thereof. Where the evidence does not fairly tend to prove all the averments necessary to make out a case, the court should direct a verdict for the defendant. Libby, McNeill & Libby v. Cook, 222 Ill. 209.

If, as is claimed by plaintiff in error, the statute above mentioned does eliminate as a defense the doctrine of assumed risk, it would not be necessary for the proof to overcome that defense; and the cause in such case should have been submitted to the jury. Sec. 1 of the above act provides that ''all drums, cogs, gearing,  *  *  *  ; all vats or pans, and all receptacles containing molten metal or hot or corrosive fluids in any factory, mercantile establishment, mill or workshop, shall be so located wherever possible, as not to be dangerous to employes, or shall be properly enclosed, fenced or otherwise protected. All dangerous places in or about mercantile establishments, factories, mills or work-shops, near to which any employe is obliged to pass, or to be employed shall, where prac-

ticable, be properly enclosed, fenced or otherwise guarded.'' The statute does not provide for any recovery by the employe against the employer for any damages by reason of any failure to comply with it. The above section is followed by thirty other sections, all of which form a complete code for the government of factories wherein the various kinds of machinery therein described are contained, prescribing how machinery shall be placed, guarded and used. The act also provides for the general sanitation of such plants, so as to insure pure air, food, water, light, etc., and requires the owners of such plants to provide these various means and measures of safety to employes. The statute also prescribes a number of duties to be performed, and acts to be omitted, by the employes. Sec. 26 of the act imposes a fine upon any such owner, manager, superintendent or agent of such owner of such factories, mills, etc., and upon any employe therein who shall remove or interfere with any guard or protective or sanitary device, required by the act, or who shall violate any of the other provisions of the act, of not less than ten dollars nor more than fifty dollars; and upon conviction of a second offense, a fine of not less than twenty-five dollars nor more than two hundred dollars. Sec. 25 provides that the chief state factory inspector shall enforce the provisions of the act and prosecute all violations of the act; and is empowered thereby to visit and inspect, at all reasonable times, all such factories. Sec. 31 provides that such inspector for the purpose of disseminating a general knowledge of the provisions of the act among employes shall have prepared a notice covering the salient features of the act in as many languages as may be necessary to make it intelligible to employes, and that such notices shall be posted in a conspicuous place in every office and work room of every establishment covered by the provisions of the act.

It is said by plaintiff in error that the evident

purpose of the statute was to preserve and protect the lives and health of employes in factories, mills and such other places of industry; and to hold that the defense of assumed risk may be made to an action for the injury of an employe by reason of a violation of the statute, would defeat the intention of the statute. If the act be viewed from the standpoint of a law suit and the recovery of money therein only, there may be much truth in this statement, this statute, however, was not framed with an expressed intent of giving any statutory action, or of abolishing either the defense of assumed risk or contributory negligence, and has not provided for the recovery of damages by the employe who is injured by reason of the violation of the statute, as a means of enforcing the statute. The true object of the statute is declared in its title, "to provide for the health, safety and comfort of employes, * * * and to provide for the enforcement thereof." The various methods and means of securing the objects of the statute, and of enforcing the statute, are specifically designated in the act itself. The question of whether or not the act will be an efficient one for its purposes, or whether or not it might be made more efficient by the elimination of the doctrine of assumed risk, is not one for our determination. After carefully examining the statute we are of the opinion that the act does not by express language or by implication eliminate the defense of assumed risk. The authorities bearing upon this question seem to be in hopeless conflict, and our Supreme Court has never expressly passed on the exact question so far as we know. We think, however, that the weight of the authority and the better reasoning support the proposition that the law of assumed risk is as well established as the rule of contributory negligence, or any other principle of the common law, and that it must clearly appear from the terms of the statute that the legislature intended to abolish it or else it is retained. In one of the leading cases on this

subject, Denver & R. G. Co. v. Norgate, 141 Fed. 253, Garland, District Judge, lays down the doctrine in very apt language, thus: "The law regarding the assumption of risk is the law which governs the relation of master and servant, and is independent of the will of either. It is not a term of the contract of employment. If it were, then the master and servant could retain or abolish it in each contract of employment. But they can do neither. It is a principle of the common law, and must be repealed, if at all, by the law making power. It is the law of the land governing all persons who assume the relation of master and servant. It is over and above the contract, and depends in no manner for its existence upon the agreement of the parties. It is founded upon public policy, the status assumed by master and servant, and upon the maxim, *volenti non fit injuria.*"

The Supreme Court of Rhode Island, in Langlois v. Dunn W. Mills, 57 Atl. R. 910, said: "A statutory duty is no more imperative in law than a common law duty. A penalty may be imposed upon the offender for a breach of statute, but it does not change the relations between the parties, except to the extent that one entering the employ of another may assume, in the absence of knowledge, that the terms of the statute have been complied with. * * * It is also well settled that a court will not presume that a statute is intended to change a rule of common law unless such an intent appears. * * * It has been common practice here and elsewhere to construe statutory duties in connection with assumed risks and contributory negligence." See also Martin v. C. R. I. & P. R. Co., 118 Ia. 148; O'Máley v. South B. G. Co., 158 Mass. 135; Swenson v. Osgood, etc., Mfg. Co., 91 Minn. 509; Anderson x. C. N. N. Lumber Co., 67 Minn. 79; Knisley v. Pratt, 148 N. Y. 372; Powell v. Ashland, etc., Co., 98 Wis. 35; Helmke v. Thilmany, 107 Wis. 216; Browne v. Siegel, Cooper & Co., 191 Ill. 226; Birmingham Ry. & Electric Co. v. Allen, 99 Ala. 359, overruling former decisions in 84 and 91 Ala.

The leading case opposed to the doctrine set forth in the foregoing decisions is, Narramore v. C. C. C. & St. L. Ry. Co., 96 Fed. 298, in which it was said by Judge Taft in substance, that the doctrine of assumed risk was based on contract, either expressed or implied. He then reasons that when a statute is passed imposing a duty on the master under a penalty, that it is not within the power of the master and servant to contract that the servant shall assume the risk of injury by reason of the violation of the statute by the master, and hence the doctrine of assumed risk is by such a statute abolished whether it expressly does so or not. The reasoning seems to be based on the false notion that, an assumption of the risk is a term of the contract of employment, expressed or implied. As a matter of fact it never has been a term of the contract in the sense that the parties may create or abolish it by contract at their pleasure. The case is followed and quoted by some other state courts, and is followed as to the law it lays down by other courts, who give little reason for their conclusion. Davis Coal Co. v. Polland, 158 Ind. 607; Green v. Amer. Car and Foundry Co., 163 Ind. 135; Sipes v. Mich. S. Co., 137 Mich. 258; The W. F. & Mfg. Co. v. Bloom, 76 Kan. 127; Green v. W. Am. Co., 30 Wash. 87.

The plaintiff in error refers to some Illinois and New York cases as authority, but they are not in point as the employment of plaintiff in error was not forbidden by the law. These cases were actions by minors under the ages of fourteen years suing for injuries under the statute prohibiting the employment of children under that age in any factory. The recoveries in all those cases were had on the grounds that the violation of the law in employing the minor was the proximate cause of the injuries. In other words it was unlawful to employ minors under fourteen years of age, and in such cases the employer was held responsible for all injuries to them and neither the doctrine of assumed risk nor of contributory negli-

gence was applicable in those cases. The Am. C. and F. Co. v. Armentraut, 214 Ill. 509; Strafford v. The Rep. I. and S. Co., 238 Ill. 371; Marino v. Lehmaier, 173 N. Y. 530.

Plaintiff in error also refers to a number of decisions in Illinois by our Supreme Court under our statutes on Mines and Miners, as applicable to this case, wherein the grounds of recovery were wilful violations of that act by the operators. That statute expressly provides for a recovery by the miner for every wilful violation thereof, and for such damages to him as are found to be the direct result of such violation. The common law action for negligence is not thereby abolished, but no recovery under the statute can be had except as provided in the statute, and where the violation of the statute is wilful. In suing under the statute the doctrine of assumed risk does not apply. In suing at common law the miner must negative the defense of assumed risk in his pleading and by his proof, although the statute may prohibit under penalty the very act that the plaintiff charges to be an act of negligence. So, the doctrine of assumed risk was held to be eliminated in Kilpatrick v. Grand T. Ry. Co., 74 Vt. 288, because the servant was given a right to maintain a suit for damages received by him by reason of the violation of the act, by the statute itself which prohibited under a penalty the use of side ladders on freight cars. The reason why the doctrine of assumed risk does not apply in those 'cases is readily seen. It would be ridiculous for a court to say that an employe on freight cars in Vermont should recover damages for an injury to himself by reason of the violation of the statute which required the company to put its ladders on the ends of the cars, provided he, the employe, did not know that the ladders were not on the ends of the cars. Such a ruling would defeat the express provision of the statute that the employe could maintain such a suit, and in every instance. So it would in suits by miners under the statute of Mines and Miners in Illi-

nois.   The doctrine of assumed risk is eliminated by those statutes by provisions therein that are entirely inconsistent with the idea that it was retained.  If the statute in question gave the plaintiff in error a right of action in express terms, he would be entitled to recover, for to deny him such right under such a provision on the doctrine of assumed risk, would be to defeat that express provision of the statute, for he would be bound to know in every such case that the cogs were not guarded, but were open and visible to any one as exposed dangers.   However, such provision is not in the statute and we cannot read it there.   Our ruling violates no intention of the legislature therein expressed or necessarily implied, and it does not invalidate any part of the statute expressed or necessarily implied.   We think the law is against the contentions of plaintiff in error.

The judgment of the court is therefore affirmed.

*Affirmed.*